IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Donald Brandt, ) | |
| ) | Civil Action No. 6:06-1938-TLW-WMC |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Jonathan Ozmint, Director, S.C. ) | |
| Department of Corrections, and ) | |
| Tom Carter, Jr., Sheriff of ) | |
| Allendale County, ) | |
| ) | |
| Respondents. ) | |

The petitioner, proceeding with the assistance of counsel, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

At the time the petition was filed in this case on June 30, 2006, the petitioner was being held at the Allendale County Jail serving a six-month sentence for criminal contempt. By order filed July 12, 2006, this court granted the petitioner's motion for bond. On July 13, 2006, the petitioner posted a $50,000.00 secured bond and was released from custody.

**FACTS PRESENTED**

The petitioner sued Elizabeth K. Gooding and her law firm, Gooding & Gooding, P.A. (collectively "Gooding"), for legal malpractice with regard to her

representation of the petitioner in a land deal.  During the discovery process, in response to a request to produce, the petitioner produced a letter to Gooding dated September 18, 1995.  The letter, if authentic, would have imputed to Gooding knowledge of a conflict of interest related to the representation of the petitioner in the land deal.  The petitioner also provided the letter to his malpractice expert, and it was introduced in that expert's deposition and used by the expert to opine that Gooding had committed malpractice.

Gooding petitioned for a Rule to Show Cause asking the court to direct the petitioner to appear and show cause why the letter was genuine and authentic and to hold the petitioner in contempt and award costs if such authenticity could not be established.  A hearing was held on April 23, 2001, before Judge Diane Goodstein, who later ruled that the petition should be dismissed because a contempt proceeding was premature until after the trial of the case.  The petitioner was represented at the hearing.  Judge Goodstein granted the petitioner's counsel's motion to be relieved on July 18, 2001.  She gave the petitioner 60 days to retain new counsel.  On August 17, 2001, the petitioner requested an additional 45 days, which was opposed by Gooding.

On September 25, 2001, Gooding filed another motion for contempt and for sanctions including dismissal of the complaint.  At the same time, she filed a motion for summary judgment.  A hearing before Judge Paul Burch was held on October 22, 2001.  The petitioner was accompanied by an attorney who informed the court he had agreed to represent the petitioner only for the limited purpose of obtaining access to the disputed letter for testing by the petitioner's expert.  He explained he had a conflict and could not represent the petitioner further.  After addressing this limited issue and making the letter a court exhibit, the judge dismissed the attorney from the proceedings (app. 273-74).

Gooding's document expert testified regarding his finding that the letter was not authentic work product and did not contain an authentic signature (app. 277-89).  The judge then allowed the plaintiff's expert to review the document.  When court reconvened, the judge asked the petitioner if he had any questions for Gooding's expert witness.  The petitioner asked whether he was going to have to act as his own attorney, and Judge Burch

2

responded, "Yes, sir" (app. 291). The petitioner then told the judge that he had been to several attorneys who would not agree to represent him, and he presented a list of their names to the court. Judge Burch stated that there was not going to be any further delay, and the matter was going forward (app. 295). The petitioner attempted to cross-examine the expert and then asked if his own expert could cross-examine Gooding's expert, which request was denied (app. 297). Gooding's attorneys then outlined their evidence in support of the motion for contempt (app. 305-17). The petitioner argued in response that he should not be found in contempt (app. 317-29).

Judge Burch found that "a fraud was put forward by [the petitioner] on this court" (app. 330). He held the petitioner in "direct contempt of court based on the documents that are actually before the Court." *Id*. The judge told the petitioner that he had the right to tell him anything he would like with regard to sentencing for contempt. The petitioner responded by asking what contempt meant. Judge Burch stated that he was finding the petitioner in contempt for fraud on the court because he "brought into this case a forged letter that goes to . . . the heart of the case." The petitioner responded that he did not do it, and he claimed that he did not get a fair trial without any representation (app. 331-32). The judge sentenced the petitioner to six months in the Department of Corrections and granted summary judgment to Gooding. The judge stated that he would impose further sanctions at a future hearing where Gooding would be allowed to present evidence of costs, fees, and expenses incurred (app. 332-33).

On December 3, 2001, at a hearing before Judge Burch, the petitioner's sentence was held in abeyance and he was released from custody so that he could participate in mediation on the counterclaim sought by Gooding. On January 9, 2002, Judge Burch issued a written order memorializing his October 22, 2001, ruling. On February 11, 2002, the petitioner filed a motion for reconsideration.

Following an unsuccessful attempt at mediating a settlement of the slander counterclaim, Judge Burch ordered that the petitioner be taken back into custody on April 25, 2002. The petitioner then appealed his conviction and sentence to the South

3

Carolina Supreme Court, and he was released on bond pending resolution of that appeal. On April 10, 2006, the South Carolina Supreme Court affirmed the conviction and sentence. The court noted that the petitioner "presented a fraudulent document to the court" by introducing the document in his expert's deposition, which was introduced into evidence in the case as an attachment to his memorandum in support of motion for reconsideration. The court held "that the introduction of the document into the deposition constituted an introduction of the document into the presence of the court, warranting a citation for direct contempt." *Brandt v. Gooding*, 630 S.E.2d 259, 264 (S.C. 2006). The petitioner filed a petition for rehearing, which was denied on June 7, 2006.

On June 28, 2006, the petitioner was taken into custody to complete the service of sentence. He filed the instant petition for writ of habeas corpus on June 30, 2006, alleging that his conviction and sentence were unconstitutional for the following reasons (verbatim):

> (1)    Petitioner Brandt was denied Due Process including notice, counsel, and an opportunity to be heard on the charge of criminal contempt.

> (2)    Defendant was denied the Sixth Amendment right "to be informed of the nature and cause of the accusation and have the assistance of counsel in his defense."

> (3)    Petitioner Brandt was denied his Due Process right of the opportunity to be heard "at a meaningful time and in a meaningful manner, to include the opportunity to fully examine witnesses."

> (4)    Petitioner Brandt was denied his right to assistance of counsel and there was no knowing an intelligent waiver of this right by Petitioner Brandt.

> (5)    Petitioner Brandt was denied his right to have the criminal contempt charges proven beyond a reasonable doubt where he is protected by the presumption of innocence.

On November 27, 2006, the respondents filed a motion for summary judgment. The petition filed his opposition to the motion on January 2, 2007. As stated above, by order

4

filed July 12, 2006, this court granted the petitioner's motion for bond.  On July 13, 2006,

the petitioner posted a $50,000.00 secured bond and was released from custody.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent

part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.

## ANALYSIS

When presented with an application for habeas relief, the first inquiry is to

determine whether the claim raised on habeas was "adjudicated on the merits" by the state

court.  28 U.S.C.A. § 2254(d); *see Weeks v. Angelone*, 176 F.3d 249 (4th Cir.1999).

> For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in

5

"square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words, habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is de novo. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA de novo standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks*, 176 F.3d at 257-58.

The petitioner raises five grounds in his petition for writ of habeas corpus now before this court:

(1)    that he was denied due process, including notice, counsel, and an opportunity to be heard on the charge of criminal contempt;

(2)    that he was denied his Sixth Amendment right "to be informed of the nature and cause of the accusation and have the assistance of counsel in his defense";

(3)    that he was denied his due process right of the opportunity to be heard "at a meaningful time and in a meaningful manner, to include the opportunity to fully examine witnesses";

(4)    that he was denied his right to assistance of counsel and there was no knowing and intelligent waiver of this right; and

(5)    that he was denied his right to have the criminal contempt charges proven beyond a reasonable doubt where he is protected by the presumption of innocence.

The petitioner contends that the state court did not adjudicate his denial of due process claims for denial of right to counsel, lack of notice, and for an opportunity to be heard. On January 9, 2002, Judge Burch entered his written order (app. 23-42). In the order, Judge Burch made the following findings related to contempt:

> Lastly, and most regrettably, I find and conclude that the Defendants have presented absolutely overwhelming evidence that the 1995 Brandt Letter and its purported facsimile were fabricated, forged, and fraudulent, and that Mr. Brandt intentionally put forward this manufactured evidence and committed a fraud on the Court. I further agree with both parties' assessment that this document goes to the heart of the parties' dispute, and find that Mr. Brandt interjected this manufactured evidence into the case to "gut" the defense and in his words "undo all of their work to web a story contradictory to the plaintiff's." This fraud eviscerates the Plaintiff's case.

> The expert testimony alone is compelling, and is amply supported by Mr. Summers' detailed and cogent denial that he prepared or signed the Brandt Letter attributed to him. Particularly persuasive is the fact that there is no long distance telephone record of the facsimile transmission and no copy of the Letter in Edisto farm Credit's regularly kept business files, and that the contents of the Letter are inconsistent with apparently all the other testimony and documentary evidence gathered in this case. In contrast, I do not find credible that Mr. Brandt's wife, who by all accounts was active in the Aiken County litigation against Lombard, would have failed to bring a genuine letter to the attention of Mr. Brandt or their attorneys in the Aiken County litigation, and would have placed a genuine facsimile and letter in two separate locations within in a closet in their home rather than in her and her husband's business files.

> In summary, employing the language used by Mr. Brandt's counsel while attempting to use the Letter as a sword against the Defendants shortly after it was first produced, the Letter unmasks Mr. Brandt's story and guts his case and shows that the Defendants are correct, and, of perhaps greater concern to Mr. Brandt, will lead to his losing this lawsuit, a result he cannot fathom. As explained by Mr. Brandt's counsel while aiming the wrong way, "fraud has been perpetrated against the court", and this fraudulent Letter conclusively demonstrates that Mr. Brandt's lawsuit against the Defendants has been a fraud and a sham from the outset.

7

This Court has inherent power to punish offenses against the court that are calculated to obstruct, degrade, and undermine the administration of justice. *McLeod v. Hite*, 272 S.C. 303, 251 S.E.2d 746 (1979). This contempt power extends to punish acts performed with the "deliberate purpose to corrupt administration of justice, accompanied by overt act on part of contemnor, designed to carry purpose into effect, notwithstanding failure of design..." *State v. Weinberg*, 229 S.C. 286, 92 S.E.2d 842, 845-846 (1956)....

In addition to remedies available for civil contempt, I have the power to punish criminally contempt that pollutes the administration of justice. *In Re Harry C. Brown*, 333 S.C. 414, 511 S.E.2d 351 (1998)(finding that both civil and criminal contempt findings were warranted); *State v. Weinberg*, 229 S.C. 286, 92 S.E.2d 842 (1956)(affirming fixed term of imprisonment where the defendant discussed the case with two possible jurors who had not been seated); S.C. Code Ann. § 14-5-320 (1976)("The circuit court may punish by fine or imprisonment, at the discretion of the court, all contempts of authority in any cause or hearing before the same."). Fraud upon the Court is not just an affront to the opposing party and is not fully remedied by measures designed to make the other party whole. It is also an affront to the Court itself. To punish that affront, and in vindication of the Court's authority, Mr. Brandt is also to be sentenced to six (6) months imprisonment running from the date of the October 22, 2001 hearing.

(App. 40-42).

In his motion for reconsideration of Judge Burch's order, the petitioner asserted that his due process rights were violated because he never knowingly waived his right to counsel at the contempt proceedings (app. 204-207). He further asserted that he had a lack of notice because he thought the purpose of the October 22, 2001, hearing was to determine when his expert would be allowed to examine the letter (app. 207-208). He contended that he had not been arrested, indicted, or charged with any criminal offense, he did not have an opportunity to be heard, and the court applied an erroneous standard of proof (app. 209-211). Judge Burch denied the motion, stating that "the court had to do something because it [the forged letter] was a gross fraud pulled on the court" (app. 412).

8

In the appeal, the plaintiff again raised the due process issues.  The South Carolina Supreme Court found as follows:

> Brandt contends the trial court erred in holding him in direct criminal contempt. We disagree.
>
> It is within the trial court's discretion to punish by fine or imprisonment all contempts of authority before the court. S.C. Code Ann. § 14-5-320 (1976). In addition, courts have the inherent power to punish for offenses that are calculated to obstruct, degrade, and undermine the administration of justice. *State ex rel. McLeod v. Hite*, 272 S.C. 303, 305, 251 S.E.2d 746, 747 (1979).
>
> Direct contempt involves contemptuous conduct in the presence of the court. *State v. Kennerly*, 337 S.C. 617, 620, 524 S.E.2d 837, 838 (1999). A person may be found guilty of direct contempt if the conduct interferes with judicial proceedings, exhibits disrespect for the court, or hampers the parties or witnesses. *State v. Havelka*, 285 S.C. 388, 389, 330 S.E.2d 288 (1985). Direct contempt that occurs in the court's presence may be immediately adjudged and sanctioned summarily. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).
>
> "South Carolina courts have always taken a liberal and expansive view of the 'presence' and 'court' requirements." *Kennerly*, 337 S.C. at 620, 524 S.E.2d at 838. The "presence of the court" extends beyond the mere physical presence of the judge or the courtroom to encompass all elements of the system. *Id.*
>
> This Court has recognized that depositions are judicial proceedings and are within the "presence of the court." *Matter of Golden*, 329 S.C. 335, 496 S.E.2d 619 (1998). In *Golden*, the Court held that "although a deposition is not conducted in a courtroom in the presence of a judge, it is nonetheless a judicial setting." Because there is no presiding authority, it is even more incumbent upon attorneys to conduct themselves in a professional and civil manner during a deposition. *Id.* at 343, 496 S.E.2d at 623.
>
> In the present case, the record shows that Brandt presented a fraudulent document to the court. The document was introduced at the deposition of Professor John Freeman. In addition, the deposition was introduced into evidence in the case as an attachment to his Memorandum in Support of

> Motion for Reconsideration. Further, the record shows that Brandt was the sole cause of the introduction of the document into this case when he provided a supplemental response to the request to produce one day before Professor Freeman's deposition. We hold that the introduction of the document into the deposition constituted an introduction of the document into the presence of the court, warranting a citation for direct contempt.
>
> Therefore, we hold that the trial court did not err in citing Brandt for direct criminal contempt.

*Brandt v. Gooding*, 630 S.E.2d 259, 264 (S.C. 2006).

While the court found that the lower court did not err in citing the petitioner for direct criminal contempt, the court did not address the due process issues. Accordingly, it appears to this court that the petitioner is correct in his assertion that the state court did not adjudicate his due process claims on the merits. Therefore, our review of questions of law and mixed questions of law and fact is *de novo* and not the deferential standard of review urged by the respondents. *See Weeks*, 176 F.3d at 258.

The respondents first argue that summary judgment should be granted on the claim that the petitioner was deprived of his due process right by proceeding at the October 22, 2001, hearing without counsel. The respondents acknowledge that under the United States Supreme Court's ruling in *Argersinger v. Hamlin*, 407 U.S. 25, 37-38 (1972) ("absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial"), and *Scott v. Illinois*, 440 U.S. 367, 373 (1979) (limiting *Argersinger* to situations where a defendant is actually incarcerated), due process requires the assistance of counsel in a proceeding that results in actual incarceration (resp. m.s.j. 21). The respondents argue that summary contempt proceedings are exempt from this "evolving jurisprudence." Specifically, the respondents point out that some states "have rejected the applicability of *Argersinger* to the summary contempt context" while others "have followed the *Argersinger*

10

rule in the summary contempt context" (resp. m.s.j. 22-23) (compiling cases).  Therefore, the respondents argue that "[a]ssuming the state court may have concluded that he had no right to counsel, this is not an unreasonable application of *Argersinger* under 28 U.S.C. Section 2254(d)(1) where some other states have agreed with that position" (resp. m.s.j. 23-24).  However, as stated above, this court's review of the issue is *de novo* and not whether the state court unreasonably applied Supreme Court precedent.

> [D]irect contempt involves contemptuous conduct occurring in the presence of the court. *State v. Goff*, 228 S.C. 17, 88 S.E.2d 788 (1955). South Carolina courts have always taken a liberal and expansive view of the "presence" and "court" requirements. This State's courts have held the "presence of the court" extends beyond the mere physical presence of the judge or the courtroom to encompass all elements of the system. *See, e.g., State v. Goff, supra*; *In the Matter of Golden*, 329 S.C. 335, 496 S.E.2d 619 (1998); *In the Matter of Goude*, 296 S.C. 510, 374 S.E.2d 496 (1988).

*State v. Kennerly*, 524 S.E.2d 837, 838 (S.C. 1999).  In *State v. Havelka*, 330 S.E.2d 288 (S.C. 1985), the South Carolina Supreme Court stated that "a person may be found guilty of direct contempt if his conduct interferes with judicial proceedings, exhibits disrespect for the court or hampers the parties or witnesses."  *Id.* at 288.  In federal court, as in South Carolina state court, "[d]irect contempts that occur in the court's presence may be immediately adjudged and sanctioned summarily."  *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 n.2 (1994) (citing *Ex parte Terry*, 128 U.S. 289 (1888)).

In *Cooke v. United States*, 267 U.S. 517 (1925), cited by the petitioner, the United States Supreme Court stated that in cases of direct contempt, "[t]here is no need of evidence or assistance of counsel before punishment, because the court has seen the offense.  Such summary vindication of the court's dignity and authority is necessary."  *Id.* at 534.  In *Cooke*, the Supreme Court reversed the criminal contempt conviction and sentence of an attorney who had written a "contemptuous" letter to the trial judge requesting that the judge recuse himself.  The Court concluded that such conduct did not amount to

11

contempt in "open court" such that the defendant could be summarily convicted and sentenced without due process safeguards.  In reaching its holding, the Court elaborated on the type of situations where contemptuous conduct could be punished summarily without notice, right to counsel, and a hearing.  The Court limited situations where a person can be found in contempt and summarily punished without the due process safeguards to those instances where the conduct occurred "under the eye or within the view of the court."  As explained in *Cooke*,

> The court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors and witnesses, and misbehavior anywhere in such place is misbehavior in the presence of the court. It is true that the mode of proceeding for contempt is not the same in every case of such misbehavior. Where the contempt is committed directly under the eye or within the view of the court, it may proceed 'upon its own knowledge of the facts, and punish the offender, without further proof, and without issue or trial in any form' (*Ex parte Terry*, 128 U. S. 289, 309); whereas, in cases of misbehavior of which the judge cannot have such personal knowledge, and is informed thereof only by the confession of the party, or by the testimony under oath of others, the proper practice is, by rule or other process, to require the offender to appear and show cause why he should not be punished. 4 Bl. Com. 286.'

*Id.* at 535 (quoting *Savin, Petitioner*, 131 U.S. 267, 277 (1889)).

The Court distinguished between the phrase "in the presence of the court" and what it calls the "narrower phrase, 'under the eye or within the view of the court,' or 'in open court,' or 'in the face of the court.'"  It is only where the contempt behavior occurs within the view of the judge so that the judge has personal knowledge of the conduct that due process procedural safeguards are dispensed.  *Id.* at 536-37.  Otherwise,

> ... the offender must be allowed to offer evidence and argument in his defense, otherwise any judgment which the Court may pronounce will be absolutely void. Contempt of court is a specific criminal offense, and a party charged therewith, through the proceeding in more or less summary in character,

> has the same inalienable right to be heard in his defense as he
> would against a charge of murder or any other crime.

*Long v. McMillan*, 86 S.E.2d 477, 482 (S.C. 1955).

In this case, the petitioner interfered with judicial proceedings by providing the fraudulent letter to his expert who relied upon it in rendering his opinions.  He showed disrespect for the court by introducing the fraudulent letter into the case in Professor John Freeman's deposition and continuing to vouch for the letter's authenticity in the hearing before Judge Burch on October 22, 2001 (app. 319-20).  Further, the introduction of the letter was obviously intended to hamper the parties and witnesses.  *See State v. Havelka*, 330 S.E.2d 288 (S.C. 1985).  However, were it not for the testimony of Gooding's document expert, who testified regarding his finding that the letter was not authentic work product and did not contain an authentic signature  (app. 277-89), Judge Burch would not have known about the petitioner's misconduct.  Judge Burch stated in his order, "Defendants have presented absolutely overwhelming evidence that the 1995 Brandt Letter and its purported facsimile were fabricated, forged, and fraudulent" (app. 40-42).  Accordingly, this is a case "of misbehavior of which the judge cannot have such personal knowledge, and is informed thereof only by the confession of the party, or by the testimony under oath of others." *Cooke*, 267 U.S. at 535.  Clearly this misconduct, while perhaps within the "presence of the court,"  was not "'under the eye or within the view of the court,' or 'in open court,' or 'in the face of the court,'" as set out in *Cooke*.  *Id.* at 535 (quoting *Savin, Petitioner*, 131 U.S. 267, 277 (1889)).  Based upon the foregoing, this court finds that the petitioner was entitled to due process safeguards.

The respondents next argue that even if the petitioner had a right to counsel, he waived that right by his inaction in availing himself of counsel (resp. m.s.j. 24).  "The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state for federal court must be afforded the right to the assistance of counsel

before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. 806, 807 (1975). This right may be waived. Waiver may be accomplished by making an intentional and voluntary relinquishment of this right. A trial court, however, must determine that the waiver is the product of a knowing, voluntary, and intelligent decision. Moreover, as to waiver of trial counsel, a *pro se* defendant "must be warned specifically of the hazards ahead." These warnings "of the pitfalls of proceeding to trial without counsel … must be rigorously conveyed." *Iowa v. Tovar,* 541 U.S. 77, 88-89 (2004).

The petitioner had counsel relieved within the civil proceeding, and Judge Goodstein ordered on July 18, 2001, that the petitioner had been given 60 days from June 18, 2001, to obtain new counsel (app. 19-20). On August 17, 2001, the petitioner sought another 45 days to hire an attorney (app. 131). The motions for contempt and sanctions were served on September 25, 2001 (app. 133). The record reflects that the petitioner was personally served on that date (app. 135). The notice was sent on October 17, 2001, for the October 22, 2001, hearing on "all pending motions" (app. 177). At the October 22, 2001, the petitioner appeared with counsel, Jahue Moore, who was representing him only on a limited matter and not on the pending motions. The petitioner has not asserted that he was indigent and entitled to appointed counsel.

At the outset of the October 22, 2001, hearing, counsel for the civil defendants noted that it had been 66 days since the petitioner asked for a 45-day extension and he still had not complied with the order to retain counsel (app. 265, 268, 272). The petitioner stated that he had talked with 20 or more attorneys about handling his case (app. 291). The defendants' counsel argued that the petitioner had been given enough time to acquire new counsel (app. 295).

However, as argued by the petitioner, the record reveals that he was never advised of his right to counsel and was never warned of the dangers of self-representation. At the close of the direct examination of Gooding's expert, the trial judge asked, "Mr. Brandt

14

do you have any questions of Mr. Dawson? He's your witness at this time." The petitioner responded, "Your Honor, are you saying I'm going to have to act as my attorney?" The judge answered, "Yes." (app. 291). Thus, it was at this late stage in the proceeding that the petitioner was first told that he was being forced to represent himself. However, even at this point, the judge offered no explanation of the nature of the charge or of the petitioner's right to counsel. Moreover, Judge Burch did not give the petitioner any warnings against proceeding *pro se* in the contempt trial. In fact, Judge Burch never actually informed the petitioner that he was being tried for a criminal offense that could result in incarceration.

The respondents argue that the petitioner was aware of the need for counsel based upon the court's earlier directives and orders in June and July (resp. m.s.j. 15) (citing *U.S. v. Bauer*, 956 F.2d 693, 695 (7th Cir. 1992) (valid waiver when defendant failed to retain counsel after court determined his financial ability to do so); *U.S. v. Weninger*, 624 F.2d 163, 167 (10th Cir. 1980) (valid waiver when defendant refused to retain counsel despite repeated urging by judge)). However, the petitioner notes that although Judge Goodstein's July 18, 2001, order gave him 60 days in which to retain counsel to "prosecute" the legal malpractice action, Judge Goodstein made no ruling and set no schedule whereby the petitioner would be advised or expected to retain counsel to represent him on the charge of criminal contempt. Judge Goodstein's July 18, 2001, order never mentioned the contempt issue. Further, Judge Goodstein quite naturally did not address any supposedly pending contempt action given the fact that only two months earlier she had ruled that no such action would take place until after trial (pet. resp. m.s.j. 9).

The petitioner further argues that he informed Judge Burch that he had conducted an exhaustive search for an attorney willing to represent him on the legal malpractice case of action. He never argued that his search for counsel included the criminal contempt matter, and Judge Burch never so inquired. The petitioner contends that he was simply unaware that any contempt proceeding was imminent or that he would be

15

called upon to answer criminal charges.  Nevertheless, the petitioner did appear at the hearing with an attorney who was willing to assist with addressing the forgery allegation but would not undertake to represent him in the legal malpractice action.  Judge Burch refused to allow this attorney to participate in any manner at the hearing.  The petitioner argues that, under these circumstances, no knowing or voluntary waiver of the right to counsel could be found.  Further, the record indicates the petitioner lacked a sufficient background to understand the ramifications of proceeding *pro se.*  As argued by the petitioner, his lack of understanding of the legal process is palpable on the record of the October 22, 2001, hearing.  For example, the petitioner believed that he could have his expert witness cross-examine the State's expert.  The petitioner had questions for the expert, but explained that he "didn't expect to be the one to ask him. I expected some attorney would ask him" (app. 324).  In addition, he stated just before he was sentenced that the most he knew about contempt was that it was "something wrong" (app. 331).

Based upon the foregoing, this court finds that the petitioner did not knowingly and voluntarily waive counsel at the contempt proceeding, and summary judgment should be denied on this claim.

The petitioner next contends that he lacked notice of the potential for being held in criminal contempt at the hearing.  The Sixth Amendment guarantees a criminal defendant the right "to be informed of the nature and cause of the accusation … and to have the assistance of counsel for his defense."  U.S. Const. Amend. VI.  The South Carolina Supreme Court has enumerated different ways in which an accused could be notified of the charges against him.  These methods include (1) being served with an arrest warrant or indictment; (2) being arraigned on the charge; or (3) being advised by any official or lawful authority of the charges against him.  *See State v. Green*, 239 S.E.2d 485, 487 (S.C. 1977).  The petitioner was not arrested or arraigned, and he was not advised by any official or lawful authority of the charges against him prior to the hearing on October 22,

16

2001. In fact, the first conversation the petitioner had with any official or lawful authority concerning the contempt charge was his conversation with the judge immediately after conviction and before sentencing. As set forth above, Judge Goodstein ruled that any contempt proceeding would be held only after the trial of the case. Judge Goodstein's order was unchallenged by Gooding. Although Judge Burch was apparently unaware of Judge Goodstein's May 17, 2001, order, the petitioner contends that he was fully aware of the terms of that order. After Judge Goodstein's order was filed, a second motion for contempt was filed by Gooding. The petitioner contends that when he received notice of the hearing set for October 22, 2001, for all outstanding motions, he rightfully believed that the matters addressed would be his motions related to access to the letter and for extension of time. The petitioner thus came to the hearing asking the judge (1) to grant him access to the questioned letter so that his expert could perform an examination to establish its authenticity; and (2) to grant the requested extension of time in which to retain counsel to pursue his legal malpractice action. He argues that he justifiably did not expect to face criminal contempt charges at this hearing (pet. resp. m.s.j. 11-13). The petitioner further argues that the motion for citation of contempt was made in direct contravention of Judge Goodstein's standing order of May 17, 2001, so it failed to effectively place him on notice that the contempt would be disposed of pre-trial. Based upon the foregoing, summary judgment is inappropriate on this claim.

The petitioner next claims that he was denied an opportunity to be heard in defense of the charge of contempt (pet. resp. m.s.j. 13-14). He argues that without the assistance of counsel he was denied a full opportunity to examine the witnesses. This court agrees. Judge Burch found that the petitioner gave "no indication" that he sought to have his expert testify to the results of his limited examination or to respond to the points raised by Gooding's expert witness. Judge Burch further indicated that the petitioner did not choose to testify in his own defense. Actually, the petitioner did ask, "Can Mr. Gideon come

17

up here by me, sir?" (app. 297).   The trial judge responded, "No.   Do you have any questions of this witness at this time?"   The petitioner responded that he had "many" questions for Dawson and asked if his expert could question Dawson.   This request was denied (app. 297).   The petitioner clearly gave some indication that he wanted his expert to testify.  However, on the whole, the record demonstrates that the petitioner simply did not know how to present a witness on his behalf, how to cross-examine the witnesses against him, or even that he had the right to testify in his own defense.  Further, none of these basic rights were explained to the petitioner by Judge Burch.   Based upon the foregoing, summary judgment should also be denied on this claim.

In his last claim, the petitioner contends that he was denied his right to have the criminal contempt charges proved beyond a reasonable doubt.   The respondents moved for summary judgment on this claim, and the petitioner did not present opposition to those arguments.   Accordingly, it appears that the petitioner has abandoned this claim, and summary judgment should be granted.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, this court recommends that the respondents' motion for summary judgment be granted as to the petitioner's claim that he was denied his right to have the criminal contempt charges proved beyond a reasonable doubt, and denied as to all other claims.

s/William M. Catoe
United States Magistrate Judge

April 4, 2007

Greenville, South Carolina