IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Donald Brandt, | ) | |
| | ) | Civil Action No. 6:06-1938-HFF-WMC |
| Petitioner, | ) | |
| | ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Jonathan Ozmint, Director, S.C. | ) | |
| Department of Corrections, and | ) | |
| Tom Carter, Jr., Sheriff of | ) | |
| Allendale County, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

The petitioner, proceeding with the assistance of counsel, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

At the time the petition was filed in this case on June 30, 2006, the petitioner was being held at the Allendale County Jail serving a six-month sentence for criminal contempt. By order filed July 12, 2006, this court granted the petitioner's motion for bond. On July 13, 2006, the petitioner posted a $50,000.00 secured bond and was released from custody.

## FACTS PRESENTED

The petitioner sued Elizabeth K. Gooding and her law firm, Gooding & Gooding, P.A. (collectively "Gooding"), for legal malpractice with regard to her

representation of the petitioner in a land deal.  During the discovery process, in response to a request to produce, the petitioner produced a letter to Gooding dated September 18, 1995.  The letter, if authentic, would have imputed to Gooding knowledge of a conflict of interest related to the representation of the petitioner in the land deal.  The petitioner also provided the letter to his malpractice expert, and it was introduced in that expert's deposition and used by the expert to opine that Gooding had committed malpractice.

Gooding petitioned for a Rule to Show Cause asking the court to direct the petitioner to appear and show cause why the letter was genuine and authentic and to hold the petitioner in contempt and award costs if such authenticity could not be established. A hearing was held on April 23, 2001, before Judge Diane Goodstein.  The petitioner was represented at the hearing.  Judge Goodstein noted that trial was scheduled for the May 21, 2001, term of court.  In her ruling issued May 17, 2001, Judge Goodstein found, "[T]he Petition should be dismissed without prejudice because a contempt proceeding is premature until after the trial of this case."  She granted the petitioner's counsel's motion to be relieved on July 18, 2001, and she gave the petitioner 60 days to retain new counsel. On August 17, 2001, the petitioner requested an additional 45 days, which was opposed by Gooding.

On September 25, 2001, Gooding filed another motion for contempt and for sanctions including dismissal of the complaint.  At the same time, she filed a motion for summary judgment.  On October 17, 2001, the Clerk's Office gave notice that Judge Burch would hear all pending motions on October 22, 2001 (app. 177).  A hearing before Judge Paul Burch was held on October 22, 2001.  The petitioner was accompanied by an attorney who informed the court he had agreed to represent the petitioner only for the limited purpose of obtaining access to the disputed letter for testing by the petitioner's expert.  He explained he had a conflict and could not represent the petitioner further.  After addressing this limited issue and making the letter a court exhibit, the judge dismissed the attorney from the proceedings (app. 273-74).

2

Gooding's document expert, Mr. Dawson, testified regarding his finding that the letter was not authentic work product and did not contain an authentic signature (app. 277-89). The judge then allowed the petitioner's expert, Mr. Gideon, to review the document. When court reconvened, the judge asked the petitioner if he had any questions for Gooding's expert witness. The petitioner asked whether he was going to have to act as his own attorney, and Judge Burch responded, "Yes, sir" (app. 291). The petitioner then told the judge that he had been to several attorneys who would not agree to represent him, and he presented a list of their names to the court. Judge Burch stated that there was not going to be any further delay, and the matter was going forward (app. 295). The petitioner attempted to cross-examine the expert and then asked if his own expert could cross-examine Gooding's expert, which request was denied (app. 297).

At this point in the hearing, counsel for Gooding stated, "We are prepared at this time to present our arguments with regard to the authenticity of the documents in accordance with our motion for a citation of contempt and for sanctions against Mr. Brandt" (app. 305). Gooding's attorneys then outlined their evidence in support of the motion for contempt (app. 305-17). Counsel referenced the testimony of Mr. Dawson and various other witnesses who would testify that the disputed letter was a fabrication, not bonafide, and not sent in the normal course of business (app. 305-11). Counsel noted that the petitioner and several members of his family had testified on deposition that the letter was found shortly after Christmas 2000, when the family was going through Mrs. Brandt's personal papers. Counsel for Gooding reported, "They said that on the 27th of December, they went up to her closet and they were looking through there and they found a gold vinyl or leatherette tote bag." Counsel reported that the petitioner testified that they found a number of documents and that among these documents was a faxed version of the disputed letter. Counsel concluded, "We believe the evidence is overwhelming, and we believe that it proves that Mr. Brandt has engaged in a deliberate practice to uh prepare a fabricated letter, to arrange to have forged signature put on it, to have it uh - - uh ostensibly found five years later in his wife's closet and to have others come forward and corroborate

3

him about that, namely, his own daughters." Counsel concluded, "So therefore, the submission of a fabricated and false document to counsel and then to an expert witness is a direct contempt done in the presence of the Court" (app. 315). Counsel requested the court to find the petitioner in contempt of court and to impose sanctions. Counsel specifically requested that the petitioner be required to pay Gooding their costs and fees. Counsel then stated, "And finally Your Honor, let me remind you that you also have the authority to impose criminal contempt sanctions" (app. 317).  This was the first time the words "criminal contempt" were uttered during this hearing.

Judge Burch asked the petitioner if he had anything to argue to the court. petitioner responded, "I couldn't get no lawyer and I didn't come here for no trial, so if I knew this - -" (app. 317-18).  Counsel for Gooding further moved for summary judgment on the cause of action for legal malpractice (app. 329). The court took a five minute break before making his ruling. The judge then ruled from the bench:

> My law clerk and I have been comparing the evidence and the Memorandums and the various motions that have been filed here. This matter is about as serious as you can possibly imagine on the overall court system taken as a whole and as far as the effect on the court system.
>
> Uh, Mr. Brandt, in no way does the Court insinuate or make any finding that you actually signed or forged a name. That is not the concern of the Court, after it has reviewed all of this matter. What concerns me the most here is the fraud that has transpired in this case and no one but you can be held responsible for it.
>
> The evidence is overwhelming, absolutely overwhelming, that a fraud was put forward by you on this Court. The date of the letter, the ramifications that has with the partnership involved, the amounts involved and all, when you all mesh it together, the evidence is overwhelming, and I'm going to have to deal with you very sternly concerning this.
>
> I find you in direct contempt of court based on the documents that are actually before the Court and the right and discretion this Court has in dealing with such a serious matter as this. And before I go forward with a sentence, I am required to hear from

4

> you concerning anything you may want to tell me concerning
> the sentence, and/or sanctions for contempt of court . . . .

(App. 330).

The petitioner responded by asking what contempt meant. Judge Burch stated that he was finding the petitioner in contempt for fraud on the court because he "brought into this case a forged letter that goes to . . . the heart of the case." The petitioner responded that he did not do it, and he claimed that he did not get a fair trial without any representation (app. 331-32). The judge sentenced the petitioner to six months in the Department of Corrections and granted summary judgment to Gooding. The judge stated that he would impose further sanctions at a future hearing where Gooding would be allowed to present evidence of costs, fees, and expenses incurred (app. 332-33).

On December 3, 2001, at a hearing before Judge Burch, the petitioner's sentence was held in abeyance and he was released from custody so that he could participate in mediation on the counterclaim sought by Gooding. On January 9, 2002, Judge Burch issued a written order memorializing his October 22, 2001, ruling. Judge Burch found as follows in his written order:

> Lastly, and most regrettably, I find and conclude that the Defendants have presented absolutely overwhelming evidence that the 1995 Brandt Letter and its purported facsimile were fabricated, forged, and fraudulent, and that Mr. Brandt intentionally put forward this manufactured evidence and committed a fraud on the Court. I further agree with both parties' assessment that this document goes to the heart of the parties' dispute, and find that Mr. Brandt interjected this manufactured evidence into the case to "gut" the defense and in his words "undo all of their work to web a story contradictory to the plaintiff's." This fraud eviscerates the Plaintiff's case.
>
> The expert testimony alone is compelling, and is amply supported by Mr. Summers' detailed and cogent denial that he prepared or signed the Brandt Letter attributed to him. Particularly persuasive is the fact that there is no long distance telephone record of the facsimile transmission and no copy of the Letter in Edisto Farm Credit's regularly kept business files, and that the contents of the Letter are inconsistent with apparently all the other testimony and documentary evidence

5

gathered in this case. In contrast, I do not find credible that Mr. Brandt's wife, who by all accounts was active in the Aiken County litigation against Lombard, would have failed to bring a genuine letter to the attention of Mr. Brandt or their attorneys in the Aiken County litigation, and would have placed a genuine facsimile and letter in two separate locations within in a closet in their home rather than in her and her husband's business files.

In summary, employing the language used by Mr. Brandt's counsel while attempting to use the Letter as a sword against the Defendants shortly after it was first produced, the Letter unmasks Mr. Brandt's story and guts his case and shows that the Defendants are correct, and, of perhaps greater concern to Mr. Brandt, will lead to his losing this lawsuit, a result he cannot fathom. As explained by Mr. Brandt's counsel while aiming the wrong way, "fraud has been perpetrated against the court", and this fraudulent Letter conclusively demonstrates that Mr. Brandt's lawsuit against the Defendants has been a fraud and a sham from the outset. This Court has inherent power to punish offenses against the court that are calculated to obstruct, degrade, and undermine the administration of justice. *McLeod v. Hite*, 272 S.C. 303, 251 S.E.2d 746 (1979). This contempt power extends to punish acts performed with the "deliberate purpose to corrupt administration of justice, accompanied by overt act on part of contemnor, designed to carry purpose into effect, notwithstanding failure of design..." *State v. Weinberg*, 229 S.C. 286, 92 S.E.2d 842, 845-846 (1956). . . .

In addition to remedies available for civil contempt, I have the power to punish criminally contempt that pollutes the administration of justice. *In Re Harry C. Brown*, 333 S.C. 414, 511 S.E.2d 351 (1998)(finding that both civil and criminal contempt findings were warranted); *State v. Weinberg*, 229 S.C. 286, 92 S.E.2d 842 (1956)(affirming fixed term of imprisonment where the defendant discussed the case with two possible jurors who had not been seated); S.C. Code Ann. § 14-5-320 (1976)("The circuit court may punish by fine or imprisonment, at the discretion of the court, all contempts of authority in any cause or hearing before the same."). Fraud upon the Court is not just an affront to the opposing party and is not fully remedied by measures designed to make the other party whole. It is also an affront to the Court itself. To punish that affront, and in vindication of the Court's authority, Mr. Brandt is also to be sentenced to six (6) months imprisonment running from the date of the October 22, 2001 hearing.

(App. 40-42).

On February 11, 2002, the petitioner filed a motion for reconsideration. Within the memorandum, he asserted that there was a due process violation by the criminal contempt sentence because he never knowingly waived his right to counsel at the contempt proceedings (app. 204-07). He further asserted that he had a "lack of notice" because he thought the purpose of the October 22, 2001 hearing was to determine when his expert would be allowed to examine the letter (app. 207-08). He further contended therein that he had not been arrested, indicted, or charged with any criminal offense (app. 209). As to "opportunity to be heard," he claimed "without proper notice and counsel; he did not have an opportunity to be heard" (app. 209). He further asserted that the court applied an erroneous standard of proof, rather than proof beyond a reasonable doubt that the petitioner knew, at the time he gave the letter to his then attorney, Larry Richter, that the letter was a forgery (app. 210). He further claimed that, at most, the fraud was intrinsic fraud and not fraud on the court (app. 210-11; 370-76).  A hearing was held on the motion on April 25, 2002, before Judge Burch, who denied the motion to reconsider.  Judge Burch also ordered that the petitioner be taken back into custody on that date.

The petitioner then appealed his conviction and sentence to the South Carolina Supreme Court, and he was released on bond pending resolution of that appeal. On April 10, 2006, the South Carolina Supreme Court affirmed the conviction and sentence. The court noted that the petitioner "presented a fraudulent document to the court" by introducing the document in his expert's deposition, which was introduced into evidence in the case as an attachment to his memorandum in support of motion for reconsideration. The court held "that the introduction of the document into the deposition constituted an introduction of the document into the presence of the court, warranting a citation for direct contempt." *Brandt v. Gooding*, 630 S.E.2d 259, 264 (S.C. 2006).  The petitioner filed a petition for rehearing, which was denied on June 7, 2006.

7

On June 28, 2006, the petitioner was taken into custody to complete the service of sentence. He filed the instant petition for writ of habeas corpus on June 30, 2006, alleging that his conviction and sentence were unconstitutional for the following reasons (verbatim):

> (1)    Petitioner Brandt was denied Due Process including notice, counsel, and an opportunity to be heard on the charge of criminal contempt.
>
> (2)    Defendant was denied the Sixth Amendment right "to be informed of the nature and cause of the accusation and have the assistance of counsel in his defense."
>
> (3)    Petitioner Brandt was denied his Due Process right of the opportunity to be heard "at a meaningful time and in a meaningful manner, to include the opportunity to fully examine witnesses."
>
> (4)    Petitioner Brandt was denied his right to assistance of counsel and there was no knowing an intelligent waiver of this right by Petitioner Brandt.
>
> (5)    Petitioner Brandt was denied his right to have the criminal contempt charges proven beyond a reasonable doubt where he is protected by the presumption of innocence.

By order filed July 12, 2006, this court granted the petitioner's motion for bond. On July 13, 2006, the petitioner posted a $50,000.00 secured bond and was released from custody. The petitioner remains on bond to this date.

On November 27, 2006, the respondents filed a motion for summary judgment. The petitioner filed his opposition to the motion on January 2, 2007. On April 4, 2007, this court recommended that the motion for summary judgment be granted as to the petitioner's claim that he was denied his right to have the criminal contempt charges proven beyond a reasonable doubt (Ground 5) and be denied as to all other claims. By order filed September 2, 2008, and amended September 3, 2008, the Honorable Henry F. Floyd, United States District Judge, adopted the recommendation.

8

On October 29, 2008, the petitioner filed his motion for summary judgment now before this court. The respondents filed their opposition on November 17, 2008. The petitioner filed a reply on December 5, 2008.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.

For a claim that was adjudicated on the merits in state court proceedings, this Court will not issue a writ of habeas corpus under the AEDPA unless (a) the state court decision is in "square conflict" with Supreme Court precedent that is controlling as to law and fact or (b) if no such controlling decision exists, "the state court's resolution of a question of pure law rests upon an objectively unreasonable derivation of legal principles from the relevant [S]upreme [C]ourt precedents, or if its decision rests upon an objectively unreasonable application of established principles to new facts." *Green v. French*, 143 F.3d 865, 870 (4th Cir.1998). "In other words,

9

> habeas relief is authorized only when the state courts have decided the question by interpreting or applying the relevant precedent in a manner that reasonable jurists would all agree is unreasonable." *Id.* When a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of questions of law and mixed questions of law and fact is de novo. *See Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir.1998) (applying pre-AEDPA de novo standard of review to claims of ineffective assistance of counsel that were properly raised, but not adjudicated on merits in state court).

*Weeks v. Angelone*, 176 F.3d 249, 257-58 (4th Cir.1999).

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold

10

demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

As discussed above, the first four grounds for relief in the habeas petition remain at issue, and the petitioner has moved for summary judgment on those grounds. In the report filed previously on the respondents' motion for summary judgment, this court found – and Judge Floyd adopted the finding in his order – that the state court did not adjudicate the petitioner's due process claims on the merits (4/4/07 Report at 10). For the reasons set forth therein, our review of questions of law and mixed questions of law and fact is *de novo* and not the deferential standard of review urged by the respondents. *See Weeks*, 176 F.3d at 258.

> [D]irect contempt involves contemptuous conduct occurring in the presence of the court. *State v. Goff*, 228 S.C. 17, 88 S.E.2d 788 (1955). South Carolina courts have always taken a liberal and expansive view of the "presence" and "court" requirements. This State's courts have held the "presence of the court"

11

> extends beyond the mere physical presence of the judge or the courtroom to encompass all elements of the system. *See, e.g., State v. Goff, supra*; *In the Matter of Golden*, 329 S.C. 335, 496 S.E.2d 619 (1998); *In the Matter of Goude*, 296 S.C. 510, 374 S.E.2d 496 (1988).

*State v. Kennerly*, 524 S.E.2d 837, 838 (S.C. 1999). In *State v. Havelka*, 330 S.E.2d 288 (S.C. 1985), the South Carolina Supreme Court stated that "a person may be found guilty of direct contempt if his conduct interferes with judicial proceedings, exhibits disrespect for the court or hampers the parties or witnesses." *Id*. at 288. In federal court, as in South Carolina state court, "[d]irect contempts that occur in the court's presence may be immediately adjudged and sanctioned summarily." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 n.2 (1994) (citing *Ex parte Terry*, 128 U.S. 289 (1888)).

In *Cooke v. United States*, 267 U.S. 517 (1925), the United States Supreme Court stated that in cases of direct contempt, "[t]here is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary." *Id.* at 534. In *Cooke*, the Supreme Court reversed the criminal contempt conviction and sentence of an attorney who had written a "contemptuous" letter to the trial judge requesting that the judge recuse himself. The Court concluded that such conduct did not amount to contempt in "open court" such that the defendant could be summarily convicted and sentenced without due process safeguards. In reaching its holding, the Court elaborated on the type of situations where contemptuous conduct could be punished summarily without notice, right to counsel, and a hearing. The Court limited situations where a person can be found in contempt and summarily punished without the due process safeguards to those instances where the conduct occurred "under the eye or within the view of the court." As explained in *Cooke*,

> "[T]he court, at least when in session, is present in every part of the place set apart for its own use, and for the use of its officers, jurors and witnesses, and misbehavior anywhere in such place is misbehavior in the presence of the court. It is true

12

> that the mode of proceeding for contempt is not the same in
> every case of such misbehavior. Where the contempt is
> committed directly under the eye or within the view of the court,
> it may proceed 'upon its own knowledge of the facts, and
> punish the offender, without further proof, and without issue or
> trial in any form' (*Ex parte Terry*, 128 U. S. 289, 309); whereas,
> in cases of misbehavior of which the judge cannot have such
> personal knowledge, and is informed thereof only by the
> confession of the party, or by the testimony under oath of
> others, the proper practice is, by rule or other process, to
> require the offender to appear and show cause why he should
> not be punished. 4 Bl. Com. 286."

*Id.* at 535 (quoting *Savin, Petitioner*, 131 U.S. 267, 277 (1889)).

The Court distinguished between the phrase "in the presence of the court" and what it calls the "the narrower phrase, 'under the eye or within the view of the court,' or 'in open court,' or 'in the face of the court.'"  It is only where the contempt behavior occurs within the view of the judge so that the judge has personal knowledge of the conduct that due process procedural safeguards are dispensed.  *Id.* at 536-37.  Otherwise,

> [T]he offender must be allowed to offer evidence and argument
> in his defense, otherwise any judgment which the Court may
> pronounce will be absolutely void. Contempt of court is a
> specific criminal offense, and a party charged therewith,
> through the proceeding in more or less summary in character,
> has the same inalienable right to be heard in his defense as he
> would against a charge of murder or any other crime.

*Long v. McMillan*, 86 S.E.2d 477, 482 (S.C. 1955).  As the Court stated in *Cooke*:

> Due process of law, therefore, in the prosecution of contempt,
> except of that committed in open court, requires that the
> accused should be advised of the charges and have a
> reasonable opportunity to meet them by way of defense or
> explanation. We think this includes the assistance of counsel,
> if requested, and the right to call witnesses to give testimony,
> relevant either to the issue of complete exculpation or in
> extenuation of the offense and in mitigation of the penalty to be
> imposed.

*Cooke*, 267 U.S. at 537.

13

In this case, the petitioner interfered with judicial proceedings by providing the fraudulent letter to his expert, who relied upon it in rendering his opinions. He showed disrespect for the court by introducing the fraudulent letter into the case in Professor John Freeman's deposition and continuing to vouch for the letter's authenticity in the hearing before Judge Burch on October 22, 2001 (app. 319-20). Further, the introduction of the letter was obviously intended to hamper the parties and witnesses. *See State v. Havelka*, 330 S.E.2d 288 (S.C. 1985). However, were it not for the testimony of Gooding's document expert, who testified regarding his finding that the letter was not authentic work product and did not contain an authentic signature (app. 277-89), Judge Burch would not have known about the petitioner's misconduct. Judge Burch stated in his order, "Defendants have presented absolutely overwhelming evidence that the 1995 Brandt Letter and its purported facsimile were fabricated, forged, and fraudulent" (app. 40-42). Accordingly, this is a case "of misbehavior of which the judge cannot have such personal knowledge, and is informed thereof only by the confession of the party, or by the testimony under oath of others." *Cooke*, 267 U.S. at 535. Clearly this misconduct, while perhaps within the "presence of the court," was not "'under the eye or within the view of the court,' or 'in open court,' or 'in the face of the court,'" as set out in *Cooke*. *Id.* at 535 (quoting *Savin, Petitioner*, 131 U.S. 267, 277 (1889)). Based upon the foregoing, this court finds that the petitioner was entitled to due process safeguards.

The petitioner had a constitutional right to counsel at the contempt hearing. Under the United States Supreme Court's ruling in *Argersinger v. Hamlin*, 407 U.S. 25, 37-38 (1972) ("absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial"), and *Scott v. Illinois*, 440 U.S. 367, 373 (1979) (limiting *Argersinger* to situations where a defendant is actually incarcerated), due process requires the assistance of counsel in a proceeding that results in actual incarceration. The respondents

14

argue, however, that summary contempt proceedings are exempt from this "evolving jurisprudence" (resp. opp. to m.s.j. 23). Specifically, the respondents point out that "the majority in *Pounders* [*v. Watson*, 521 U.S. 982 (1997)] had the opportunity to align state court contempt powers in matters of direct or summary contempt with the restrictions pressed upon the federal courts . . ., " but did not do so. The respondents further contend, "Accordingly, there is no clearly established federal law that state courts must adhere to the same in-court and out-of-court dichotomy in matters of direct or summary contempt as developed within federal jurisprudence. *Pounders* demonstrates the Supreme Court's reluctance to interpose federal standards and process in but certain core aspects of state contempt proceedings" (resp. opp. to m.s.j. 24). Therefore, the respondents argue that "[a]ssuming the state court may have concluded that he had no right to counsel, this is not an unreasonable application of *Argersinger* under 28 U.S.C. Section 2254(d)(1) where some courts in other states have agreed with that position" (resp. opp. to m.s.j. 24).

As stated above, this court's review of the issue is *de novo* and not whether the state court unreasonably applied Supreme Court precedent. Further, as argued by the petitioner, the respondents have not cited any state court opinion that upholds a trial court's authority to sentence a person to incarceration for contempt of court without providing due process procedural safeguards when the conduct does not take place in court or does not amount to direct contempt. Direct contempt is described as conduct that occurs

> in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public. If some essential elements of the offense are not personally observed by the judge, so that the must depend upon statements made by others for his knowledge about these essential elements, due process requires, according to the *Cooke* case, that the accused be accorded notice and a fair hearing as above set out.

15

*In re: Oliver*, 333 U.S. 257, 275-76 (1948). Here, as discussed above, the contemptuous conduct did not occur "in open court, in the presence of the judge" but rather had to be proven in court through the testimony of various witnesses and presentation of out-of-court evidence.

The respondents argue that even if the petitioner had a right to counsel, he waived that right by his inaction in availing himself of counsel (resp. opp. to m.s.j. 25-28). "The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state for federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. 806, 807 (1975). This right may be waived. Waiver may be accomplished by making an intentional and voluntary relinquishment of this right. A trial court, however, must determine that the waiver is the product of a knowing, voluntary, and intelligent decision. Moreover, as to waiver of trial counsel, a *pro se* defendant "must be warned specifically of the hazards ahead." These warnings "of the pitfalls of proceeding to trial without counsel … must be rigorously conveyed." *Iowa v. Tovar,* 541 U.S. 77, 88-89 (2004).

The petitioner had counsel relieved within the civil proceeding, and Judge Goodstein ordered on July 18, 2001, that the petitioner had been given 60 days from June 18, 2001, to obtain new counsel (app. 19-20). On August 17, 2001, the petitioner sought another 45 days to hire an attorney (app. 131). The motion for contempt and sanctions was served on September 25, 2001 (app. 133). The record reflects that the petitioner was personally served on that date (app. 135). The notice was sent on October 17, 2001, for the October 22, 2001, hearing on "all pending motions" (app. 177). At the October 22, 2001, the petitioner appeared with counsel, Jahue Moore, who was representing him only on a limited matter and not on the pending motions. The petitioner has not asserted that he was indigent and entitled to appointed counsel.

16

At the outset of the October 22, 2001, hearing, counsel for the civil defendants noted that it had been 66 days since the petitioner asked for a 45-day extension and he still had not complied with the order to retain counsel (app. 265, 268, 272).  The petitioner stated that he had talked with 20 or more attorneys about handling his case (app. 291). The defendants' counsel argued that the petitioner had been given enough time to acquire new counsel (app. 295).

However, as argued by the petitioner, the record reveals that he was never advised of his right to counsel and was never warned of the dangers of self-representation. At the close of the direct examination of Gooding's expert, the trial judge asked, "Mr. Brandt do you have any questions of Mr. Dawson?  He's your witness at this time."  The petitioner responded, "Your Honor, are you saying I'm going to have to act as my attorney?"  The judge answered, "Yes" (app. 291).  Thus, it was at this late stage in the proceeding that the petitioner was first told that he was going to have to represent himself.  However, even at this point, the judge offered no explanation of the nature of the charge or of the petitioner's right to counsel.  Moreover, Judge Burch did not give the petitioner any warnings against proceeding *pro se* in the contempt trial.  In fact, Judge Burch never actually informed the petitioner that he was being tried for a criminal offense that could result in incarceration.

The respondents argue that the petitioner was aware of the need for counsel based upon the court's earlier directives and orders in June and July (resp. opp. to m.s.j. 17) (citing *U.S. v. Bauer*, 956 F.2d 693, 695 (7th Cir. 1992) (valid waiver when defendant failed to retain counsel after court determined his financial ability to do so); *U.S. v. Weninger*, 624 F.2d 163, 167 (10th Cir. 1980) (valid waiver when defendant refused to retain counsel despite repeated urging by judge)).  However, the petitioner notes that although Judge Goodstein's July 18, 2001, order gave him 60 days in which to retain counsel to "prosecute" the legal malpractice action, Judge Goodstein made no ruling and set no schedule whereby the petitioner would be advised or expected to retain counsel to

17

represent him on a charge of criminal contempt. Judge Goodstein's July 18, 2001, order never mentioned the contempt issue. Judge Goodstein quite naturally did not address any supposedly pending contempt action given the fact that only two months earlier she had ruled that no such action would take place until after trial (pet. m.s.j. 27).

The respondents contend that because the petitioner was served with a motion for contempt and sanctions on September 25, 2001, and a notice was sent on October 17 for the October 22, 2001, hearing on "all pending motions," the petitioner had sufficient time to retain a lawyer after the motion was made, and thus his failure to have counsel at the hearing must then constitute a "knowing waiver" (resp. opp. to m.s.j. 17). The respondents fail to distinguish between a motion for civil contempt and summary judgment and a criminal contempt proceeding resulting in incarceration. The September 25, 2001, motion for contempt filed by Gooding was styled as "Motion For Citation Of Contempt, For Sanctions, And Dismissal Of The Complaint." The motion does not reference criminal sanctions or the possibility of incarceration. Rather, the full content of the motion reads as follows:

> The Defendants hereby move, in accordance with Rules 7, 41(b), and 60(b)(3) of the South Carolina Rules of Civil Procedure, and pursuant to this Court's inherent authority, for a citation of contempt and for sanctions against the Plaintiff and for dismissal of the complaint. Defendants will submit at a later date their Memorandum of Law with enclosures in support of this Motion for Citation of Contempt, For Sanctions, and Dismissal of the Complaint. Motion and Certificate of Service Attached as Exhibit 1.

 (Pet. reply, ex. 1).

While the respondents note that the memorandum in support of the motion for contempt, which is dated October 3, 2001, did ask that the petitioner be held in "criminal contempt" (app. 162-76), the respondents do not indicate and this court has been unable to ascertain from the record when that memorandum was filed and served on the petitioner.

18

The respondents argue throughout their brief (resp. opp. to m.s.j. 8, 16, 29) that the petitioner had notice since September 25, 2001, of the possibility that he would be held in criminal contempt. However, as set forth above, the motion for contempt filed and served on that date does not reference in any manner criminal contempt or the possibility of incarceration. The memorandum clearly was not served on September 25th based on the language of the motion and the date the memorandum was signed by Gooding's counsel. Gooding's lawyers themselves recognized the difference between the civil relief being sought in the motion and sanctions for criminal contempt. At the hearing on the petitioner's motion to reconsider, where Judge Burch released the petitioner to allow him to mediate Gooding's counterclaim, Gooding's counsel stated: "I want to make our position very clear…What I have told Mr. Miller [the petitioner's counsel] about that is, as I view the matter, criminal contempt, a matter between your honor, the court and Mr. Brandt … We just consider the criminal contempt as opposed to civil contempt as matters between your honor and Mr. Brandt" (app. 348).

Furthermore, the notice on October 17, 2001, for a hearing on "all pending motions" was inadequate to put the petitioner on notice of a criminal contempt hearing with the possibility that he would be sentenced to jail. As discussed above, Judge Goodstein ruled on Gooding's previous motion for contempt on May 17, 2001, as follows: "I have concluded that the Petition should be dismissed without prejudice because a contempt proceeding is premature until after the trial of the case" (app. 15). Judge Goodstein's order was unchallenged by Gooding and was therefore the law of the case. Therefore, the second motion for contempt failed to effectively place the petitioner on notice that he would be facing a charge of criminal contempt when he appeared for the hearing before Judge Burch on October 22, 2001. The record before the court shows that the petitioner came to the hearing believing that the matters to be addressed by the court would be his requests to have access to the letter so that his expert could perform an examination and for an

19

extension of time in which to retain counsel to pursue his legal malpractice action against Gooding.

The Sixth Amendment guarantees a criminal defendant the right "to be informed of the nature and cause of the accusation . . . and to have the assistance of counsel in his defense." The South Carolina Supreme Court has enumerated different ways in which an accused could be notified of the charges against him. The methods include (1) being served with an arrest warrant or indictment; (2) being arraigned on the charge; or (3) being advised by any official or lawful authority of the charges against him. *See State v. Green*, 239 S.E.3d 485, 487 (S.C. 1977). The petitioner was not arrested or arraigned, and he was not advised by any official or lawful authority of the charges against him prior to the hearing on October 22, 2001. In fact, the first conversation the petitioner had with any official or lawful authority concerning the contempt charge was his conversation with the judge immediately after his conviction and before sentencing (app. 331-33).

The respondents further contend that the "record reveals that Brandt was aware that he had a right to counsel at the October 21, 2001 hearing" (resp. opp. m.s.j. 16). The petitioner informed Judge Burch that he had conducted an exhaustive search for an attorney willing to represent him on the legal malpractice case of action. He never argued that his search for counsel included the criminal contempt matter, and Judge Burch never so inquired. The petitioner contends that he was simply unaware that any contempt proceeding was imminent or that he would be called upon to answer criminal charges. The petitioner did appear at the hearing with an attorney who was willing to assist with addressing the forgery allegation but would not undertake to represent him in the legal malpractice action. Judge Burch refused to allow this attorney to participate in any manner at the hearing. Further, the record indicates the petitioner lacked a sufficient background to understand the ramifications of proceeding *pro se.* As argued by the petitioner, his lack

20

of understanding of the legal process is palpable on the record of the October 22, 2001, hearing. For example, the petitioner believed that he could have his expert witness cross-examine the State's expert. The petitioner had questions for the expert, but explained that he "didn't expect to be the one to ask him. I expected some attorney would ask him" (app. 324). In addition, he stated just before he was sentenced that the most he knew about contempt was that it was "something wrong" (app. 331). The record is clear that the petitioner was never advised of his right to counsel on the charge of criminal contempt. Further, Judge Burch never warned the petitioner of the dangers of self representation. Under these circumstances and the evidence before this court, there is no basis whatsoever to argue that the petitioner knowingly waived his right to be represented in the criminal contempt proceeding. Furthermore, based upon the evidence before this court, the petitioner did not receive adequate notice of the charges against him.

   "[T]he 'fundamental requirement of due process'" is "'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). The petitioner claims that he was denied an opportunity to be heard in defense of the charge of contempt (pet. m.s.j. 31-32). He argues that without the assistance of counsel he was denied a full opportunity to examine the witnesses. This court agrees. Judge Burch found that the petitioner gave "no indication" that he sought to have his expert testify to the results of his limited examination or to respond to the points raised by Gooding's expert witness. Judge Burch further indicated that the petitioner did not choose to testify in his own defense. Actually, the petitioner did ask, "Can Mr. Gideon come up here by me, sir?" (app. 297). The trial judge responded, "No. Do you have any questions of this witness at this time?" The petitioner responded that he had "many" questions for Dawson and asked if his expert could question Dawson. This request was denied (app. 297). The petitioner clearly gave some indication that he wanted his expert to testify. On the whole, the record

21

demonstrates that the petitioner simply did not know how to present a witness on his behalf or cross-examine the witnesses against him, or even that he had the right to testify in his own defense.  Further, none of these basic rights were explained to the petitioner by Judge Burch.  Based upon the foregoing, summary judgment should also be granted on this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, no issues of material fact remain on the petitioner's remaining grounds for relief.  Accordingly, this court recommends that the petitioner's motion for summary judgment (doc. 43) be granted.


s/William M. Catoe
United States Magistrate Judge

April 24, 2009

Greenville, South Carolina

22